# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| SOUTHWESTERN PENNSYLVANIA ) | |
| REGIONAL CORPORATION, ) | Case No. 11-21860 |
| ) | |
| Debtor. ) | Chapter 11 |
| ) | |
| ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪ ) | |
| ) | |
| SOUTHWESTERN PENNSYLVANIA ) | Doc#____ |
| REGIONAL CORPORATION, ) | |
| ) | |
| Movant, ) | |
| v. ) | |
| ) | |
| FIRST COMMONWEALTH BANK and ) | |
| PNC BANK, ) | |
| ) | |
| Respondents. ) | |

## EMERGENCY MOTION FOR ORDER
## AUTHORIZING USE OF CASH COLLATERAL

Southwestern Pennsylvania Regional Corporation, the debtor and debtor-in-possession (the "Debtor"), by and through its proposed counsel, Blumling & Gusky, LLP, hereby files this Emergency Motion for Order Authorizing Use of Cash Collateral (the "Motion") and in support of this Motion, the Debtor respectfully represents as follows:

### CERTIFICATE OF NECESSITY

THE UNDERSIGNED HEREBY CERTIFIES that as a member of the Bar of this Court, I have carefully examined the matter under consideration and to the best of my knowledge, information and belief formed after reasonable inquiry, all allegations are well grounded in fact and all contentions are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law can be made, that the matter under consideration is not

interposed for any improper purpose, such as to harass, or to increase the cost of litigation, and there is just cause to request a consideration of the matter on an emergency basis. I am aware of Federal Rule Civ. Pro. 11 and Bankruptcy Rule 9011 and of the consequences which may result from violations thereof.

THE UNDERSIGNED CERTIFIES FURTHER that this matter is an emergency because the Debtor needs the use of cash collateral to operate its business going forward.

THE UNDERSIGNED CERTIFIES FURTHER that the necessity of this emergency hearing has not been caused by any lack of due diligence on my part, but has been brought about only by circumstances beyond my control or that of my client.

THE UNDERSIGNED CERTIFIES FURTHER that the amount of time needed to present information sufficient under applicable law to enable this Court to enter an order granting the requested relief is fifteen minutes.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §1408 and 1409.

## BACKGROUND

2. On March 29, 2011 (the "Petition Date"), the Debtor commenced its case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Code").

3. The Debtor is a tax-exempt corporation whose primary asset consists of the Regional Enterprise Tower located at the intersection of Sixth Avenue and William Penn Place in Pittsburgh, Pennsylvania.

4. In 1998, the Aluminum Company of America ("ALCOA") relocated from its long-time corporate headquarters at the intersection of Sixth Avenue and William Penn Place.

5. As part of its relocation, ALCOA donated the Regional Enterprise Tower to the Debtor.

6. In order to maintain the Debtor's tax exempt status, and in order to effectuate the provisions of the gift from ALCOA, the Regional Enterprise Tower is leased primarily to non-profit and government organizations dedicated to educational, cultural, and economic activities for the benefit of the inhabitants of the Southwestern Pennsylvania Region.

### **The Secured Lenders**

7. On May 24, 2002, the Debtor obtained two loans from First Commonwealth Bank in the original principal amount of $8,400,000 (the "$8,400,000 Loan") and $3,600,000 (the "3,600,000 Loan"), secured by, *inter alia*, a first mortgage on the Regional Enterprise Tower (collectively, the "First Commonwealth Loans").

8. As of March 4, 2011, the outstanding principal balances on the $8,400,000 Loan and $3,600,000 Loan are $7,053,491.58 and $3,090,697.82, respectively.

9. All rents from the Regional Enterprise Tower are paid into a lock box maintained by First Commonwealth Bank (the "Lock Box").

10. Additionally, on December 11, 2008, the Debtor obtained two loans from PNC Bank (as successor to Laurel Capital Corp.) in the original principal amount of $2,581,720 (the "$2,500,000 Loan") and $470,280 (the "$470,000 Loan"), secured by, *inter alia*, a second mortgage on the Regional Enterprise Tower (collectively, the "PNC Bank Loans").

11. Both mortgages explicitly provide that funds that the Debtor receives from sources other than operation of the Regional Enterprise Tower are not subject to any liens in favor of First Commonwealth Bank or PNC Bank.

### Events Leading to Filing of Chapter 11 Petition

12. On August 31, 2010 VisitPittsburgh's lease with the Debtor expired and VisitPittsburgh vacated the Regional Enterprise Tower.

13. On December 31, 2010 the Allegheny Conference on Community Development's lease with the Debtor expired and the Allegheny Conference on Community Development vacated the Regional Enterprise Tower. Together, VisitPittsburgh and the Allegheny Conference on Community Development represent 19% of the operating income of the Regional Enterprise Tower.

14. As a result of the departure of VisitPittsburgh and the Allegheny Conference on Community Development, rents received from the Regional Enterprise Tower are barely sufficient to pay the operating expenses of the Regional Enterprise Tower, leaving nothing to service the debt to First Commonwealth and PNC.

15. In February, 2011 the Regional Industrial Development Corporation ("RIDC") provided the Debtor with notice that it was terminating its lease in July, 2011.

16. If the RIDC vacates the Regional Enterprise Tower in July, 2011 rents received from the Regional Enterprise Tower will not be sufficient to meet operating expenses.

### First Commonwealth Bank Mortgage Foreclosure

17. As a result of the Debtor's inability to service the First Commonwealth debt, on or about March 2, 2011 First Commonwealth obtained a judgment in mortgage foreclosure by consent against the Debtor in the principal amount of $10,393,190.26.

18. A sheriff's sale of the Regional Enterprise Tower is scheduled for May 2, 2011.

19. Although the Debtor is willing to consent to the sheriff's sale, the Debtor must be sure that it will not be responsible for operation or ownership of the Regional Enterprise Tower after July, 2011.

20. The only way the Debtor can be sure that an auction free and clear of liens is conducted by July, 2011 is to avail itself of the provisions of Chapter 11 of the Bankruptcy Code.

## CASH COLLATERAL

21. Bankruptcy Code §363(c)(2) provides that the Debtor may not use, sell, or lease cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. §363(c)(2).

22. In order to continue in business it is necessary that the Debtor use the rental income collected from its operation of the Regional Enterprise Tower.

23. Access to the rental income is necessary to avoid immediate and irreparable harm to the Debtor's estate.

24. Such rent income includes the rent income collected in the Lock Box.

25. Proceeds from leases at the Regional Enterprise Tower, including the rental income collected in the Lock Box, constitutes cash collateral under Section 363 of the Bankruptcy Code.

26. Adequate protection is a concept designed to compensate a secured creditor's interest in the Debtor's property. See 11 U.S.C. § 361.

27. A secured party's interest in property of a debtor is limited to the value of the property pursuant to § 506(a)(1) of the Bankruptcy Code.

28. In the present case, the Regional Enterprise Tower, the Debtor's sole asset, has an appraised value of $5,000,000 based on the Appraisal dated July 6, 2010 attached hereto and incorporated herein as **Exhibit "A"**.

29. It is anticipated that First Commonwealth Bank will be willing to consent to the Debtor's use of cash collateral to pay necessary operating expenses at the Regional Enterprise Tower pending either delivery of the sheriff's deed or other disposition of the Regional Enterprise Tower. The Debtor's use of cash collateral will be in accordance with the budget attached hereto and incorporated herein has **Exhibit "B"**.

30. Pursuant to section 506(a)(1) of the Bankruptcy Code an allowed claim secured by a lien on property in which the estate has an interest is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, and is an unsecured claim to the extent that the value of such creditor's interest is less than the amount of such allowed claim.

31. Since the value of the Regional Enterprise Tower is approximately $5 million and since the claim of First Commonwealth is in excess of $10 million, PNC's claim is unsecured with respect to rents received from the Regional Enterprise Tower. Accordingly, PNC is not entitled to adequate protection with respect to use of the rents.

32. Based on the provisions of Sections 363(c) and 506(a)(1) of the Bankruptcy Code, and based on First Commonwealth's anticipated consent to the Debtor's use of cash collateral, the Debtor contends that no further adequate protection is required.

## **CONCLUSION**

33. Based on the foregoing, the Debtor is entitled to use of cash collateral as defined by Section 363 of the Bankruptcy Code on an interim basis.

WHEREFORE, the Debtor respectfully requests that this Honorable Court enter an Order authorizing its use of cash collateral upon the terms and conditions as set forth in the attached Order.

Respectfully submitted,

BLUMLING & GUSKY, LLP

Dated: March 29, 2011

 */s/ Michael Kaminski*
Robert J. Blumling, Esquire
Pa. I.D. No. 37943
Michael Kaminski, Esquire
Pa. I.D. No. 53493
436 Seventh Avenue
1200 Koppers Building
Pittsburgh, PA 15219
(412) 227-2500
rblumling@blumlinggusky.com
mkaminski@blumlinggusky.com

**PROPOSED ATTORNEYS FOR THE DEBTOR AND DEBTOR-IN-POSSESSION**